AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Indiana

| | |
|---|---|
| United States of America<br>v.<br><br>Ronald May<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.

1:23-mj-340-TAB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___March 5, 2023 – March 19, 2023___ in the county of ___Marion___ in the
___Southern___ District of ___Indiana___ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2251(a) and (e) | Sexual Exploitation / Attempt Sexual Exploitation of a Child |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

/s/ Laura Smith
_____
*Complainant's signature*

Laura Smith, USSS
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by
___telephone___ *(reliable electronic means)*

Date: ___5/2/2023___

City and state: ___Indianapolis, IN___

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Laura Smith, being duly sworn, hereby depose and state as follows:

1.      **Affiant**:  I am a Detective in the Cybercrime Unit of the Indianapolis Metropolitan Police Department (IMPD).  I am also a cross-designated Task Force Officer (TFO) with the United States Secret Service (USSS).

2.      **Experience**:  I have over 25 years of law enforcement experience.  I have investigated State and Federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography.  I have written numerous search warrants involving internet crimes against children cases and participated in their execution.

3.      **Training**:  I have attended and presented at the National Crimes Against Children Conference and attended numerous classes related to investigating the online sexual exploitation of children.  I am a member of the Indiana Internet Crimes Against Children (ICAC) Task Force, which includes federal, state, and local law enforcement agencies.  I am currently assigned to operate in an undercover capacity on the internet to identify and investigate persons attempting to exploit or solicit sexual acts with children or trafficking in child pornography.  As a Task Force Officer, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

4.      **Information provided**: The statements in this affidavit are based on information obtained from my observations and communications, as well as information learned from other law enforcement officers and witnesses.  Because this

1

affidavit is being submitted for the limited purpose of securing an arrest warrant and criminal complaint, I have not included each and every fact known to the investigators concerning this investigation.    I have set forth only the facts that I believe are necessary to establish probable cause that **RONALD MAY** committed a criminal offense.

5.      **Probable Cause:** For the reasons listed below, there is probable cause to believe that **RONALD MAY (MAY)**, DOB xx-xx-1969 (known to Affiant, but redacted) has committed the following offense in the Southern District of Indiana and elsewhere: **Count One – Sexual Exploitation of a Child / Attempted Sexual Exploitation of a Child.**

A.      **Sexual Exploitation / Attempt Sexual Exploitation of a Child, 18 U.S.C. § 2251(a) and (e):** Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced

2

or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed. It is also a crime to attempt to commit this crime.

6.      **Definitions**: The following definitions apply to this Affidavit:

A.      The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

B.      The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

C.      The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

7.      **Witness / Victim Identification:** Each of the persons below is identified by pseudonym to protect the identity of victims and witnesses. Your Affiant

knows the identity of each Witness / Minor Victim and can make such information available to Magistrate Judge who signs this affidavit / arrest warrant upon request.

**FACTS SUPPORTING PROBABLE CAUSE FOR ARREST WARRANT**

8. **Investigation of RONALD MAY (MAY):** On April 23, 2023, at approximately 5:08 PM, Indianapolis Metropolitan Police Department (IMPD) Officer Carlos Canche was dispatched as a result of a report of child molest at the Speedway Police Station located at 5300 Crawfordsville Road, Indianapolis, Indiana 46224. Officer Canche arrived and spoke with the complainant, Witness 1, who stated that her 12-year-old son (Minor Victim 1) had been molested by someone with whom Witness 1 works.

A. According to Witness 1, she had recently left a position working as a store manager for the Dollar Tree. As a store manager, her position sometimes required her to stay overnight. According to Witness 1, her assistant manager, MAY, had offered to watch Minor Victim 1 while she worked.

B. According to Witness 1, she trusted MAY because he was a good employee.

C. According to Witness 1, Minor Victim 1 had just disclosed to her that while MAY was babysitting Minor Victim 1, MAY had molested Minor Victim 1 and had engaged in other inappropriate behaviors. According to Witness 1, Minor Victim 1 had not gone into specific detail, but told her that MAY would make Minor Victim 1 sleep completely naked in MAY's bed while

4

he would stay overnight, and watched pornographic films with him while MAY would explain sex to Minor Vitim 1 and touch Minor Victim 1.

D.     Minor Victim 1 told Witness 1 that MAY would wrestle with Minor Victim 1. According to Minor Victim 1, while they were wrestling, Minor Victim 1's pants had fallen down, and MAY licked Minor Victim 1's exposed genitals.

E.     According to Witness 1, MAY lived at the Sebring Apartments located just south of West 21st Street and North High School Road and still worked at the Dollar Tree.

9.     Officer Canche notified the IMPD Child Abuse Unit, and the Department of Child Services (DCS). The incident was assigned Report #: 2821584.

10.     On April 24, 2023, IMPD Child Abuse Detective Shane Nicholsen was assigned to the Child Molesting investigation, reference IMPD case # IP230038061. The address of the incident was located in the 6300 block of Rathmann Drive, Indianapolis, IN 46224, which is in the Southern District of Indiana.

11.     **Interview of Minor Victim 1:** On April 26, 2023, Forensic Child Interviewer (FCI) Maya James interviewed Minor Victim 1 at the Marion County Child Advocacy Center (CAC).

A.     According to Minor Victim 1, he understood why he was being interviewed, and explained he used to spend time with Witness 1's ex-employee at the Dollar Tree, whom he identified as MAY. Minor Victim 1 stated that Witness 1 trusted MAY. Minor Victim 1 stated that MAY was a bad person.

B.      According to Minor Victim 1, MAY would babysit him at MAY's apartment while Witness 1 was working.  Minor Victim 1 stated MAY used to be really nice to him, and bought him gifts and other presents.  Minor Victim 1 stated that  MAY would let him do whatever he wanted and would also take him to various places.

C.      According to Minor Victim 1, MAY would tell him to come over to him because he wanted to play with him.  Minor Victim 1 explained that he would wrestle with MAY, and MAY would throw him onto the bed.  Minor Victim 1 stated that they would wrestle like "WWE."

D.      According to Minor Victim 1, MAY used to wrestle with Minor Victim 1 frequently.  Minor Victim 1 relayed an occasion during the daytime at MAY's apartment when no one else was present and they were wrestling on the floor.  Minor Victim 1 told the interviewer that his shorts and underwear came off as Minor Victim 1 and MAY were wrestling and explained they had both been on the floor.

E.      According to Minor Victim 1, MAY's body was on top of Minor Victim 1's body.  Minor Victim 1 stated that MAY then used his tongue to lick Minor Victim 1's "balls."  Minor Victim 1 stated that MAY apologized multiple times and told Minor Victim 1 that he had taken too much medicine that day.  Minor Victim 1 stated that MAY told him it would never happen again.

F.      According to Minor Victim 1, after that occurred, he watched a movie with MAY.  Minor Victim 1 stated that this incident occurred while he stayed with MAY over his Spring break from school.

G.      On an anatomical drawing of a male, Minor Victim 1 identified the penis / testicular area of the male as the "balls."  Minor Victim 1 identified the tongue of the male as the "tongue."

H.      Minor Victim 1 stated that MAY had two phones.  He described one phone as an Android Galaxy with a red case.  Minor Victim 1 was not certain whether MAY had taken photographs or recorded any videos of him.  However, Minor Victim 1 stated that he had observed images on MAY's phone that he thought may have depicted Minor Victim 1.

I.       According to Minor Victim 1, he asked MAY about the image, and MAY told him it was his friend's "little" cousin.  Minor Victim 1 indicated the image depicted "the other thing," and he pointed at the penis / testicular region on the anatomical drawing of the male.  Minor Victim 1 stated that there was not a face in the image and MAY did not talk about the friend.  Minor Victim 1 stated that MAY had multiple images of his friends who were naked on his phone.

J.       According to Minor Victim 1,  MAY made him watch pornography.  He stated that MAY had put the pornography on the TV in his bedroom and had made him watch it with him more than once.  Minor Victim 1 stated  that

the individuals engaged in the pornography video(s) did not have any clothing on.

K.     Minor Victim 1 described pornography as "people fucking," and that the people involved in the pornography had been adults.  According to Minor Victim 1, MAY would connect his phone to the smart-TV to watch the pornography.

L.     Minor Victim 1 stated he had recently obtained a phone from Witness 1.  Minor Victim 1 stated he and MAY communicated with each other through text messaging on that phone.  He stated that Witness 1 had observed the communication between him and MAY.

M.     According to Minor Victim 1, he believed that something had occurred with MAY's son because MAY's son hated him.  Minor Victim 1 stated that MAY's son was an adult.

N.     Minor Victim 1 said he first told Witness 1 about the licking incident when she picked up Minor Victim 1 from MAY's apartment.  According to Minor Victim 1, when MAY was initially confronted by Witness 1, he denied knowing what Minor Victim 1 was talking about.  Minor Victim 1 said Witness 1 continued to ask MAY about what had happened, and later MAY confirmed to Witness 1 that it did happen.

O.     Minor Victim 1 said Witness 1 told him not to tell anyone until she confirmed whether it was true.  According to Minor Victim 1, Minor Victim 1 saw MAY again after he told Witness 1 that MAY had molested him.

P.     Minor Victim 1 stated that MAY had two guns at his apartment including a pistol and an AK-47 that was loaded.  Minor Victim 1 stated the AK-47 was on the wall of MAY's apartment, behind the living room TV and the other gun was locked up in a safe.

12.     **Interview of Witness 1:**   On April 26, 2023, Detective Nicholsen interviewed Witness 1 at the Marion County CAC.

A.     According to Witness 1, she had known MAY for approximately one year.  She explained MAY was an assistant manager at Dollar Tree, and she had been MAY's supervisor.  Witness 1 stated she had been busy with work remodeling the Dollar Tree, and MAY had offered to babysit Minor Victim 1 for her while she worked overnight shifts.

B.     Witness 1 stated that MAY had babysat Minor Victim 1 for five days in early March of 2023 when Minor Victim 1 had been suspended from school and also during his Spring break.  She explained that Minor Victim 1's Spring Break from school was from March 24, 2023 through March 31, 2023.

C.     Witness 1 stated that Minor Victim 1 had been suspended three times from school since March of 2023.  Witness 1 stated MAY and Minor Victim 1 had been familiar with each other from various occasions they had both been at Dollar Tree.

D.     According to Witness 1, Minor Victim 1's behavior had been unusual since she had stopped working the overnight shifts at Dollar Tree.

Witness 1 stated that Minor Victim 1 had begun to masturbate openly and would say inappropriate things such as, "Daddy, fuck me."

E.     According to Witness 1, she had given Minor Victim 1 a phone. Witness 1 went through the messages on the phone, and observed messages and language between Minor Victim 1 and MAY that she felt were unusual.

F.     According to Witness 1, she asked Minor Victim 1 about the messages, and he told her that it was just the way they talked with one another. Witness 1 stated that approximately a week later, another relative noticed unusual behavior between MAY and Minor Victim 1 at Dollar Tree.

G.     Witness 1 explained that soon after, Minor Victim 1 said he did not sleep with clothing on anymore. Witness 1 stated she questioned Minor Victim 1 further. Minor Victim 1 told her that MAY had a twin-sized bed at the apartment and that he would sleep with MAY in the bed.

H.     Minor Victim 1 explained that when it was hot, MAY would make Minor Victim 1 take off his clothing. Witness 1 stated Minor Victim 1 told her that MAY would just have his boxers on in the bed and he would put his arm around Minor Victim 1. This caused Witness 1 to ask more questions.

I.     According to Witness 1, as the conversation continued, Minor Victim 1 told her that MAY had passed out from doing too many pills. Minor Victim 1 told Witness 1 that MAY had woken Minor Victim 1, and that they started wrestling. Minor Victim 1 then told her that his pants fell down and MAY had licked his "balls."

J.      According to Witness 1, Minor Victim 1 told her that it felt weird, but he said that MAY was his friend.  Minor Victim 1 also told her that Minor Victim 1 and MAY would often wrestle each other and had watched pornography together.  Witness 1 stated she started to put everything together, and she called IMPD to report what happened with Minor Victim 1.

K.      According to Witness 1, she reviewed all the text messages between Minor Victim 1 and MAY from Minor Victim 1's phone.  Witness 1 stated there were various messages that included emojis and other messages saying that they missed and loved each other.  Additionally, Witness 1 stated that MAY had recently began calling her non-stop and texting her that he wanted to see Minor Victim 1.

L.      According to Witness 1, the messages from MAY had escalated, and MAY had told Witness 1 that MAY knew where they lived, and that Minor Victim 1 and Witness 1 could not hide from him.  Witness 1 stated that MAY had threatened to call the police and had asked her to relay the date of Minor Victim 1's birthday.

M.      According to Witness 1, she did not believe that MAY was aware that she had contacted the police, but was worried that she would do so.  The day before the interview, MAY had showed up to her new job and asked to speak with Minor Victim 1.  Witness 1 stated she did not know the exact address that MAY lived, but that it was an apartment within the Sebring Court Apartments.

11

N.    At the conclusion of the interview, Witness 1 sent three screenshot images of the text message thread between Witness 1 and MAY. The messages depicted MAY sending numerous messages asking about Minor Victim 1 including asking about the date of Minor Victim 1's birth.

13.    **Harassment report IMPD case # IP230038413:** On April 24, 2023, at approximately 6:00 pm, Officer Kamal Bola was dispatched to investigate a claim of harassment, and spoke with the complainant, Witness 1.   According to Witness 1, MAY had been harassing Witness 1 in response to the report Witness 1 had made on the day before to the police regarding MAY's molestation of Minor Victim 1.

14.    According to Witness 1, MAY was texting her saying, "I know where you live." Witness 1 stated she told him to stop calling and texting her, but that he persisted.  She told the officer that MAY had driven past her house on April 24, 2023 in his blue 4-door sedan. She requested a report and was given a case card.

15.    On April 26, 2023, Detective Nicholsen met with Witness 1 at her home. Minor Victim 1's phone had been secured in a safe at the house.  Detective Nicholsen read Witness 1 a Consent to Search form for Minor Victim 1's phone.  She provided consent for Detective Nicholsen to take possession of the phone and search the data within the phone, signing the Consent to Search form.  Detective Nicholsen collected Minor Victim 1's black Schok phone with a red case.

16.    Detective Nicholsen reviewed a text message conversation between Minor Victim 1 and MAY.

A.      The messages appeared to have begun around March 8, 2023.  On March 15, 2023, there were messages from Minor Victim 1 to "Ronnie" (MAY) that stated, "U r my Ronnie," and, "What did I doooooooo big boy."  MAY had asked for Minor Victim 1 to join in a video chat with a provided link for the chat.  Additionally, it was observed that MAY called Minor Victim 1 a "butt hole," and Minor Victim 1 replied, "Ronnie bonnie me know what you think this skin looks great."

B.      On March 25, 2023, MAY messaged "boy," to Minor Victim 1.  Minor Victim 1 replied, "Ronnie bonnie I have a girl on here I'm not sure if I can get off work at the store and I don't know what u look at the store and I don't know what u look like a girl on here I'm not going to be able to be there by always be there for you to be my GF or."  The conversation continued when Minor Victim 1 stated, "Ronnie I can seeeeee u," "Ron can we leave," "I was going hard."

C.      On March 27, 2023, Minor Victim 1 explained he had gone to the other side to use the restroom.  Minor Victim 1 then stated, "Shut up I'm having diarrhea baaaaaaaaad."  MAY replied, "Ok I will leave u here."  Minor Victim 1 said no, to which MAY stated, "U know I will not leave u."

D.      On April 1, 2023, Minor Victim 1 called MAY a butt hole.  MAY replied, "You too."  The conversation continued when Minor Victim 1 messaged, "Duck u big daddy."  MAY replied back to Minor Victim 1, "u first."  MAY then

appeared to tell Minor Victim 1 to watch what he was typing because Witness 1 could see it.  Minor Victim 1 stated, "Nah I'll delete it."

E.      On April 2, 2023, MAY messaged Minor Victim 1, "Miss u," and Minor Victim 1 responded a few messages later, "luv u."  MAY replied, "me too buddy."

F.      On April 5, 2023, Minor Victim 1 messaged MAY, "I'm about to leave had to reschedule the home thing so now we are going to eat then I think we will be on our way to ur home love uuuuuuuuuuuuuuuuuuu."

G.      On April 6, 2023, MAY texted Minor Victim 1, "I would quite my job 4 u."  Minor Victim 1 replied, "Ty and I went to the bathroom and Justin is like why do u have ur phone I said it's none of ur bissness and he got mad."

H.      On April 7, 2023, MAY messaged Minor Victim 1, "Hi buddy miss u."  Minor Victim 1 and MAY continued in conversation, and it appeared Minor Victim 1 was concerned about whether he would be able to stay with MAY.

I.      On April 23, 2023, MAY messaged Minor Victim 1, "Miss u," "Hi buddy," "Yes," "Yes or tonight."  Minor Victim 1 replied, "OK love UUUUU." Minor Victim 1 then messaged, "Love u ❤️."  Later that evening, Minor Victim 1 texted MAY, "Ron this stupid android keeps dieing 24 7 I can't wait to see u tomorrow love uuuuuuuu."

17.     Detective Nicholsen also reviewed the text message thread between Minor Victim 1 and Witness 1.

14

A.      On March 29, 2023, Minor Victim 1 texted his mother repeatedly in what appeared to be an attempt for her to respond back to him.  Minor Victim 1 then texted Witness 1, "(redacted relative relationship) Ron (MAY) is cheating on u with me."  There were no other messages after that message for that day.

B.      On March 30, 2023, the next observable text message after the last message from March 29, 2023, read, "(redacted relative relationship) u don't need to pick me up today I'm bot sick anymore u can even asked ron (MAY)."

18.     Detective Nicholsen queried MAY through the Indiana Bureau of Motor vehicles and located his address was listed as 6323 Rathmann Drive Apt. A, Indianapolis, Indiana 46224.  This apartment was located within the Sebring Court Apartments.

19.     On April 27, 2023, Detective Nicholsen requested permission to search the residence of 6323 Rathmann Drive Apt. A, Indianapolis, Indiana 46224 and the person of MAY, date of birth xx-xx-1969 (redacted).  The search warrant was granted by Marion County Judge Travis Shields under cause #49D19-2304-MC-012020.

20.     **Execution of Search Warrant:**   On April 28, 2023, Detective Nicholsen and Detective Jaime Hoch, executed the search warrant at MAY's apartment on Rathmann Drive.

A.   Detective Nicholsen met MAY at the entry way of the apartment. MAY and his roommate were detained for the duration of the search warrant.

B.   Detective Nicholsen took photographs of the interior and exterior of the apartment to document the incident's location. Detective Nicholsen located 24 devices in what appeared to be MAY's bedroom. Detective Nicholsen secured all the devices in his police vehicle. Detective Nicholsen and Detective Hoch transported MAY to the Child Abuse office located at 4134 N. Keystone Avenue, Indianapolis, Indiana for interview.

21.   **Preliminary review of PNY USB:** Detective Nicholsen previewed the USB and observed an image of Minor Victim 1 who appeared asleep. The next image appeared to be an image of Minor Victim 1's penis.

22.   After previewing the image, Detective Boyce contacted this affiant to assist with the investigation. I contacted Detective Mark Barnett and Detective Chandra Scherzinger to assist.

A.   **Preliminary Forensic Examination of the PNY USB drive:** Detective Chandra Scherzinger, of the IMPD Digital Forensics Unit, conducted a preliminary forensic examination of the PNY USB with a lanyard that had been previously located in a storage container next to MAY's bed.

B.   There were approximately 40 images located within a file folder on the USB. There was an image of what appeared to be Minor Victim 1 sleeping. The other images depicted what appeared to be an adult hand

pulling down the pants of Minor Victim 1 next to Minor Victim 1's exposed penis.

23.   **Completed forensic examination of PNY USB drive:**   Detective Chandra Scherzinger went to the IMPD Digital Forensic Lab to complete a report of the examination.   She observed thirty-nine (39) images suspected to be Minor Victim 1.

A.   Filename:   20230305_020439.jpg—This image depicts Minor Victim 1 who appears to be sleeping on his back with acid washed style blue jeans.   Minor Victim 1 was identified by Detective Nicholsen.   The EXIF data shows the camera as a Samsung SM-A716U1 with a capture date of 3/5/2023 2:04:42 AM.

B.   Images:   20230305_021525.jpg,   20230305_021530.jpg, 20230305_021718.jpg,   20230305_021725.jpg,   20230305_021801.jpg, 20230305_021920.jpg, 20230305_021956.jpg,  and  20230305_022001.jpg all depict a hand in the image next to Minor Victim 1's exposed penis with his pants pulled down.   The same jeans as observed and described in image 20230305_020439.jpg is shown in the images.   All the images were taken with the Samsung SM-A716U1 on 3/5/2023 from 2:15:28 AM to 2:20:04 AM.

C.   Images:   20230310_234445.jpg,   20230310_234641.jpg, 20230310_234651.jpg,   20230310_234655.jpg,   20230310_234739.jpg, 20230310_234749.jpg,   20230310_234758.jpg,   20230310_235007.jpg, 20230310_235016.jpg,   20230310_235053.jpg,   20230310_235102.jpg,

20230310_235220.jpg,      20230310_235227.jpg,      20230310_235329.jpg,

20230310_235337.jpg,      20230310_235349.jpg,      20230310_235437.jpg,

20230310_235443.jpg,      20230310_235632.jpg,      20230310_235639.jpg,

20230311_001345.jpg, 20230311_001356.jpg all depict a hand in the image

next to Minor Victim 1's exposed penis.  All these images were taken with the

Samsung SM-A716U1 between 3/10/2023 11:44:48 PM and 3/11/2023 12:13:59

AM.

    D.    Images:    20230319_014730.jpg,    20230319_015132.jpg,

20230319_015349.jpg,      20230319_015357.jpg,      20230319_015438.jpg,

20230319_015513.jpg, 20230319_015629.jpg, and 20230319_015635.jpg all

depict Minor Victim 1's exposed penis.  All these images were taken with the

Samsung SM-A716U1 on 3/19/2023 from 1:47:33 AM to 1:56:37 AM.

    E.    One notable video was also located on the PNY drive.  The video

filename 20230318_230646.mp4 shows MAY's bedroom.  The video shows MAY

attempting to video through a slightly open bathroom door.   Detective

Nicholsen confirmed the video to show MAY's bedroom and bathroom which he

observed during the search warrant.   No persons were observed in the

bathroom despite the attempt.

24.   Based on my training and experience, the Images located on the PNY

USB drive set forth in paragraphs B, C, and D constitute child pornography as they

depict lascivious exhibition of Minor Victim 1's genitals.

25.    **Interview of MAY:** On April 28, 2023, at 3:16 PM Detective Nicholsen read and explained the Advice of Rights *Miranda* document to MAY.  MAY said that he understood his rights, signed the document, and waived his rights.  The interview was video and audio recorded.

A.    During the interview, MAY confirmed his address on Rathmann Drive and that his cellphone number as 317-599-XXXX (redacted, known to this affiant).

B.    While discussing the allegations, Detective Nicholsen told MAY that there were allegations involving someone who MAY had babysat.  MAY confirmed that he babysat Minor Victim 1, mentioning his name specifically. MAY initially said that he believed that someone was telling Detective Nicholsen lies, adding that it was Witness 1's ex-husband.  MAY claims that he thought that Witness 1's ex-husband was angry with him.

C.    MAY said that he started babysitting Minor Victim 1 approximately 2 months ago and stayed overnight with him during his Spring Break near the end of March.

D.    MAY said he had been in a dating relationship with Witness 1 since December of 2022 until approximately two weeks ago.

E.    Detective Nicholsen told MAY that Minor Victim 1 had been interviewed, and asked MAY if something had occurred between them.  MAY said that he checked Minor Victim 1 "down there".  He said he had asked Witness 1 for permission and then checked to see if Minor Victim 1 was okay

down there.  When asked why he needed to check Minor Victim 1, MAY said he couldn't recall why, but that Witness 1 said it was fine.  Detective Nicholsen asked him to explain.  MAY said that he touched Minor Victim 1's penis with his hand once while checking him.  MAY said this occurred at his apartment in his bedroom.  MAY initially said he couldn't remember exactly what was said during that time.  Later, MAY added that Minor Victim 1 doesn't like the way his penis looked, specifically the appearance of the skin under his circumcision.  MAY claimed that this had occurred one time.  MAY explained that this was a "father" thing and was not a sexual thing.  He said Minor Victim 1 was lying on the bed when this occurred.

F.    MAY said that Minor Victim 1 would scream when he would tickle him in public and said that Minor Victim 1 would scream "rape" as they were playing around.

G.    When asked about wrestling, MAY agreed that they wrestled and played around,  and that he had picked up Minor Victim 1 to throw him on the bed during wrestling.

H.    Detective Nicholsen asked MAY about other incidents between MAY and Minor Victim 1, licking Minor Victim 1 on his testicles, and MAY's medication usage.  MAY claimed that he sometimes would go blank while taking the medication for depression.

I.    When asked about licking Minor Victim 1's genitals incident, MAY initially said that he didn't realize it and didn't remember it.  MAY then

added that he remembered that it had happened,  and he apologized for it, but couldn't remember much else about it.  When asked, MAY confirmed that it occurred at his apartment.  He said it may have been an accident because he couldn't remember it.

J.      Detective Nicholsen asked MAY about communications with Minor Victim 1.  MAY said that they texted and once video chatted via cellular phones.  He denied anything inappropriate.

K.      Detective Nicholsen asked MAY about watching pornography with Minor Victim 1.  MAY denied it and said that Minor Victim 1 told him that he had seen it before.

L.      Detective Nicholsen discussed the digital devices which were seized from MAY's residence.  MAY then stated that he was bi-sexual, and there were homosexual interactions on many of the devices.  MAY stated that only three of the phones worked which included his main phone (dark blue Samsung cellular phone with a red case), a blue Samsung cellular phone with a red case, and a black Samsung Galaxy S9 with a black case.

M.      According to MAY, there was also more homosexual interaction on the USB devices.  MAY stated he did not know if there were any nude children on the devices because he could not recall exactly.  MAY stated that if something was found, he was sorry and recognized that he would likely be in trouble.  MAY said he had obtained a lot of the images from the internet, and he couldn't be sure of the ages of the individuals in the images.

N.      Detective Nicholsen inquired about whether there were images of Minor Victim 1.  According to MAY, there were images that depicted Minor Victim 1's face. There would also be images showing Minor Victim 1 asleep wearing a shirt on that had a big face on it and jeans.  MAY denied having sexually explicit images of Minor Victim 1.  He further denied possessing sexually explicit images of any other children.  MAY also denied that Minor Victim 1 had asked him about a naked image on his phone.

O.      MAY provided the passcodes to his cell phones which had been seized.  Detective Nicholsen asked MAY about computers, and MAY claims to not have computers.  MAY said he couldn't remember what was on the USB drives that had been seized by law enforcement, but said some may contain pornography and family pictures.

P.      When asked where Minor Victim 1 slept, MAY said Minor Victim 1 slept in a chair once, but mostly slept with him up against the wall.  He denied that Minor Victim 1 slept naked and said that Minor Victim 1 slept in his underwear once.  MAY offered that he is worried about the flash drives and said, "If I fucked up, I fucked up."

Q.      After a break, Detective Nicholsen confronted MAY about the images that law enforcement had located on the PNY USB with a lanyard.  MAY immediately began talking to himself, calling himself stupid.  MAY said he did not mean to do it and couldn't remember it all.

22

R.      When asked how many times this occurred, MAY said there were two to three things, on two different nights.  MAY admitted that it was Minor Victim 1's penis depicted in the images.  MAY said he had taken the images of Minor Victim 1's penis while he was asleep on his bed at the apartment.

S.      MAY told Detective Nicholsen that he used his main phone to take the images.  MAY explained that he transferred the images from his phone to the USB to get them off his phone.  MAY stated Minor Victim 1 never woke up when he took the photographs.

T.      When asked how he took the images, MAY stated he just "did it," and he was not thinking.  MAY stated he did it because of his stupidity.  MAY stated that he felt bad because he was humiliated, said it was not right, and he could not explain it.  MAY said nobody else saw the images, and he did not send them to anyone.

U.      MAY explained he felt the worst about the images of Minor Victim 1 compared to everything previously discussed with Detective Nicholsen.  MAY denied there would be any additional minors on any of the other devices.  MAY denied any sexual attraction to Minor Victim 1 and could not explain why he took the images.

V.      After the interview, MAY was placed under arrest and transported to the Marion County Jail.

26.  **MAY's cellular phone:** Detective Mark Barnett examined MAY's Samsung SM-A716U1 phone and observed Minor Victim 1's image files within the

cache of the phone.  These are visually similar to the files which were located on the PNY USB drive.

27.    All the conduct in question occurred in the Southern District of Indiana. The Defendant used his Samsung cell phone to produce sexually explicit visual depictions of Minor Victim 1, and then transferred the images to the PNY USB drive. The cell phone and the USB drive were not manufactured in Indiana or contained parts not manufactured in Indiana and, therefore, travelled in interstate and foreign commerce.

28.    **Conclusion:** Based upon the contents of this Affidavit, there is probable cause to believe that **MAY** has committed the above-listed offense, namely Sexual Exploitation of a Child in that between on or about March 5, 2023 and March 19, 2023, **MAY** employed, used, persuaded, induced, enticed, or coerced Minor Victim 1 to engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, including images described as the lascivious display of Minor Victim 1's genitals, among others, as described in Paragraph 23, which were transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted

using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

29.    I respectfully request that the Court issue a Criminal Complaint and Arrest Warrant for **MAY** charging him with the offense listed above.

/s/ *Laura Smith*
Task Force Officer Laura Smith
United States Secret Service

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 5/2/2023



Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

25